UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| William Hoover, *on his behalf and on behalf of all others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>Sears Holding Corporation,<br><br>Defendant. | Civil Action No.: _____<br><br><br>**COMPLAINT** |

For his Class Action Complaint, Plaintiff, William Hoover, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

## INTRODUCTION

1. Plaintiff, William Hoover ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Sears Holding Corporation ("Sears"). Sears sent unauthorized text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

2. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited February 9, 2016); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3. Sears, one of the nation's largest retailers, is the owner of the retail store brands

1

Sears and Kmart and operates over 1,500 retail store locations throughout the country.

4. Vibes Media, LLC ("Vibes") is a company which "help[s] marketers unlock new revenue by arming them with the technology and guidance they need to succeed in mobile marketing." http://www.vibes.com/ (last visited July 2, 2016).

5. Inaneffort to market and advertise Sears's products and brands,Vibes, acting on behalf of Sears,sent automated text messages to consumers advertising certain in-store promotions and sales at Sears's retail store locations. As part of this text messaging campaign, Plaintiff and other consumers received automated telemarketing text messages without their prior express written consent as required by the TCPA.

6. Sears devised, created and approved this text messaging campaign.

7. Moreover, Sears wholly disregards consumers' requests for Sears's text messages to stop. Indeed, Sears continued to send consumers its text messages even after Plaintiff and other similarly situated consumers texted "STOP" to Sears and Vibes.

8. The telemarketing messages were sent to consumers' cell phones by or on behalf of Sears using a fully automated system. The messages were unauthorized and not sent for emergency purposes. Accordingly, Sears's messages violated the TCPA.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this District and a substantial part of the events giving rise to the claim occurred in this District.

**PARTIES**

11.     Plaintiff is, and at all times mentioned herein was, an adult individual residing in Little Egg Harbor, New Jersey, and is a "person" as defined by 47 U.S.C. § 153(39).

12.     Sears is an Illinois business entity with an address of 3333 Beverly Road, Hoffman Estates, Illinois 60179-0001, and is a "person" as defined by 47 U.S.C. § 153(39).

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

13.     The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

14.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

15.     47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and
(B)     to dial such numbers.

16.     "Prior express written consent" is required before making automated telemarketing calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200.

17.     The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short

message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

### ALLEGATIONS APPLICABLE TO ALL COUNTS

18.     In or around December 2015, Sears began sending text messages to Plaintiff's cellular telephone number, 609-XXX-1890.  True and correct copies of some of the text messages received by Plaintiff from Sears are produced below[1]:



---

[1] The images below reflect four text messages from Sears.  The message sent at 12:08 p.m. is duplicated in these two screenshots.

4

19. Sears's text messages to Plaintiff advertised certain promotions and sales available at Sears's retail locations.

20. One such text message stated "Sears: HAPPY FATHER'S DAY! You've lucked out with Complimentary Store Pickup for gifts he'll love! START SHOPPING: http://vbs.cm/g1yEu1."

21. Another text message stated "Sears: SALE-spangled summer: Visit Sears for your July 4th needs! Shop now: http://vbs.cm/g13FPD"

22. After receiving Sears's text messages to his cellular telephone, Plaintiff responded "STOP" in or around April 2016 and, once again, on June 27, 2016, yet Sears proceeded to send Plaintiff subsequent unwanted text messages despite knowing that itdid not have Plaintiff's consent to do so.

23. Plaintiff never provided Sears with his cell phone number or his prior express consent to call his cell phone numbers with automated text messages.

24. The text messages sent to Plaintiff's cellular phone by Sears advertised the availability of Sears's products and services and thus constitute 'telemarketing.'

25. The text messages received by Plaintiff were fully automated. The content of the messages received by Plaintiff was not individualized to Plaintiff in any way. The exact same text messages were automatically sent to thousands of consumers as a part of the pre-planned telemarketing campaign.

26. The text messages sent to Plaintiff's cellular phone were made with an ATDS as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

27. The telephone number messaged by Sears was assigned to a cellular telephone

5

service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

28. The messages from Sears to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## CLASS ACTION ALLEGATIONS

### A. The Class

29. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

30. Plaintiff represents, and is a member of the following classes:

**Class 1:All persons within the United States who did not provide Sears clear and conspicuous prior express written consent to send automated telemarketing text messages and who received one or more automated telemarketing text messages, from or on behalf of Sears, to said person's cellular telephone, made through the use of any automatic telephone dialing system within four years prior to the filing of the Complaint**

**Class 2: All persons within the United States who, after notifying Sears that it no longer wished to receive automated telemarketing text messages received one or more text messages, from or on behalf of Sears, to said person's cellular telephone, made through the use of any automatic telephone dialing system within four year prior to the filing of the Complaint.**

31. Sears and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the tens of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

### B. Numerosity

32. Upon information and belief, Sears sent automated telemarketing text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to

be so numerous that joinder of all members is impracticable.

33. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' records.

**C. Common Questions of Law and Fact**

34. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

    a. Whether Sears sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

    b. Whether Sears can meetits burden of showing it obtained prior express written consent to send each message;

    c. Whether Sears's conduct was knowing and/or willful;

    d. Whether Sears is liable for damages, and the amount of such damages; and

    e. Whether Sears should be enjoined from such conduct in the future.

35. The common questions in this case are capable of having common answers. If Plaintiff's claim that Sears routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D. Typicality**

36. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

37. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

### F. Proceeding via Class Action is Superior and Advisable

38. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Sears is small because it is not economically feasible for Class members to bring individual actions.

39. Management of this class action is unlikely to present any difficulties. Courts have routinely certified classes in TCPA actions. These cases include, but are not limited to:*Johnson v. Yahoo!, Inc.*, No. 14-2028, 2016 WL 25711, at *9 (N.D. Ill. Jan. 4, 2016); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (granting TCPA class certification and finding that "[w]ithout the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute"); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

### COUNT I
### Violations of the Telephone Consumer Protection Act,
### 47 U.S.C. § 227, *et seq.*

40. Plaintiff repeats and realleges the above paragraphs of this Complaint and

incorporates them herein by reference.

41. Sears sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classeswithout their prior express written consent.

42. Each of the aforementioned messages by Sears constitutes a violation of the TCPA.

43. Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

44. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Sears in the future.

45. Plaintiff and the Classes are also entitled to and do seek a declaration that:

   a. Sears violated the TCPA;

   b. Sears placed telemarketing text messages; and

   c. Searsplaced text messages to the Plaintiff and the Classes without prior express written consent.

**COUNT II**
**Knowing and/or Willful Violations of the**
**Telephone Consumer Protection Act,**
**47 U.S.C. § 227, *et seq.***

46. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

47. Sears knowingly and/or willfully sent multiple automated text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Classeswithout their prior express consent.

48. Each of the aforementioned messages by Sears constitutes a knowing and/or willful violation of the TCPA.

49. As a result of Sears's knowing and/or willful violations of the TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

50. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Sears in the future.

51. Plaintiff and the Classes are also entitled to and do seek a declaration that:

   a. Sears knowingly and/or willfully violated the TCPA;
   b. Sears knowingly and/or willfully placed telemarketing text messages to Plaintiff and the Classes;
   c. Sears knowingly and/or willfully obtained the telephone numbers of non-customers;
   d. Sears willfully placed telemarketing text messages to non-customers such as Plaintiff and the Classes, knowing they did not have prior express written consent to do so; and
   e. It is Sears's practice and history to place telemarketing text messages to non-customers without their prior express consent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Classes the following relief against Sears as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Sears in the future;
2. Declaratory relief as requested;
3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

5. An award of attorneys' fees and costs to counsel for Plaintiff; and

6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: July 26, 2016

        Respectfully submitted,

        By /s/ Sofia Balile
        Sofia Balile, Esq.
        LEMBERG LAW, L.L.C.
        43 Danbury Road, 3rd Floor
        Wilton, CT 06897
        Telephone: (917) 981-0849
        Facsimile:  (888) 953-6237
        Attorneys for Plaintiff