**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| William Hoover, *on his behalf and on behalf of all others similarly situated,* <br><br> Plaintiff, <br> v. <br><br> Sears Holding Corporation, <br><br> Defendant. | Civil Action No.: 3:16-cv-04520(AET)(TJB) <br><br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** |

For this, his First Amended Class Action Complaint, Plaintiff, William Hoover, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

## INTRODUCTION

1. Plaintiff, William Hoover ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Sears Holding Corporation ("Sears").

2. Sears bombarded Plaintiff's cellular telephone with automated, promotional, telemarketing text messages as part of its "Sears Alerts Program" without Plaintiff's prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA").

3. Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited February 9, 2016); *see also* Nicole Perlroth, Spam Invades a Last Refuge, the Cellphone, N.Y. Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2

1

billion received in 2009 . . . .").

4. To stem the tide, "prior express written consent" is required before making automated telemarketing calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice to the recipient. 47 C.F.R. § 64.1200.

5. The prior express written consent requirement was set forth by the Federal Communication Commission ("FCC") in 2012. *See In re Rules & Regs. Implementing the TCPA of 1991*, 27 FCC Rcd. 1830 ¶ 20 (Feb. 15, 2012) ("We conclude that requiring prior express written consent for telemarketing calls utilizing autodialed or prerecorded technologies will further reduce the opportunities for telemarketers to place unwanted or unexpected calls to consumers."). The requirement was reaffirmed by the FCC in 2015. *See In re Rules & Regs. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 8013-14 (July 10, 2015).

6. As set forth herein, Sears took Plaintiff's cellular telephone number, placed into a telemarketing text message campaign without Plaintiff's consent and proceeded to bombard Plaintiff with unwanted text messages. Plaintiff seeks damages for himself and for a class of similarly situated consumers.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this District and a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

9.  Plaintiff is, and at all times mentioned herein was, an adult individual residing in Little Egg Harbor, New Jersey, and is a "person" as defined by 47 U.S.C. § 153(39).

10. Sears is an Illinois business entity with an address of 3333 Beverly Road, Hoffman Estates, Illinois 60179-0001, and is a "person" as defined by 47 U.S.C. § 153(39).

## ALLEGATIONS APPLICABLE TO ALL COUNTS

11. On or about October 4, 2015, Sears began sending text messages to Plaintiff's cellular telephone number 609-XXX-1890 as part of Sears' "Sears Alert Program."

12. Between October 4, 2015, through June 26, 2016, Sears sent Plaintiff approximately 68 text messages as part of the Sears Alert Program.

13. Through the Sears Alert Program, Sears sends marketing materials concerning sales, offers and deals at Sears' stores directly to consumers' cellular telephones.

14. All the texts messages sent to the Plaintiff included marketing and sales promotions. A representative sample of the text messages sent Plaintiff follows:

> Sears: It's our Columbus Day Mattress Spectacular w/ up to 60% off top brands + Free Delivery + $100 gift card w/ purch. of select brands: http://vbs.cm/I0hhhq

(October 4, 2015).

> Sears: Surprise! It's your lucky day. Redeem $20 in Surprise Points when you spend $80 by 11/02: http://vbs.cm/l0Ik6H

(October 27, 2015).

> Sears: Winning! You've just scored $7 in surprise points on your next purchase of $15+: http://vbs.cm/40vyi4

(March 11, 2016).

> Sears: HAPPY FATHER'S DAY! You've lucked out with Complimentary Store Pickup for gifts he'll love! START

SHOPPING: http://vbs.cm/q1yEu1

(June 19, 2016).

15. The text messages received by Plaintiff were fully automated. The content of the messages received by Plaintiff was not individualized to Plaintiff in any way. The exact same text messages were automatically sent to thousands of consumers as part of the pre-planned Sear's Alert telemarketing campaign.

16. Sears used a company called Vibes Media, LLC ("Vibes"), a company which "help[s] marketers unlock new revenue by arming them with the technology and guidance they need to succeed in mobile marketing" (http://www.vibes.com/ (last visited July 2, 2016)) to send the text messages.

17. At all times, Vibes worked at the direction, knowledge and instruction of Sears.

18. The text messages sent to Plaintiff's cellular phone were made with an ATDS as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

19. The text messages were not authorized by the Plaintiff.

20. Plaintiff is not a customer of Sears.

21. Plaintiff did not enroll in the Sears Alerts Program.

22. Plaintiff did not provide his prior express written consent for Sears or Vibes to send him text marketing as part of the Sears Alerts Program.

23. The Sears Alert text messages were annoying, frustrating, distracting, inconveniencing, and a constant nuisance to Plaintiff. The message disrupted Plaintiff from taking care of his children, including getting them ready for school in the morning. The messages interrupted Plaintiff during a doctor's visit. The messages inconvenienced Plaintiff and invaded Plaintiff's privacy while he was resting from an injury and surgery at home.

24. Moreover, the text messages took over Plaintiff's personal property, his cell phone, during the time that the messages were incoming and while Plaintiff retrieved them. Plaintiff's time was wasted retrieving Defendant's messages Plaintiff neither asked for nor wanted.

25. Moreover, the calls caused Plaintiff tangible harm. Defendant's calls caused Plaintiff's cell phone battery to deplete, resulting in Plaintiff recharging the battery more often and incurring additional electricity charges.

26. The messages were sent to Plaintiff's cell phone for which he pays for cellular service.

## CLASS ACTION ALLEGATIONS

### A. The Class

27. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

28. Plaintiff represents, and is a member of the following class:

**All persons within the United States who did not provide Sears clear and conspicuous prior express written consent to send automated telemarketing text messages as part of the Sears Alerts Program and who received one or more automated telemarketing text messages, from or on behalf of Sears, to said person's cellular telephone, made through the use of any automatic telephone dialing system within four years prior to the filing of the Complaint**

29. Sears and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the tens of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

B. <u>Numerosity</u>

30. Upon information and belief, Sears sent automated telemarketing text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

31. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' records.

C. <u>Common Questions of Law and Fact</u>

32. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

    a. Whether Sears sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

    b. Whether Sears can meet its burden of showing it obtained prior express written consent to send each message;

    c. Whether Sears's conduct was knowing and/or willful;

    d. Whether Sears is liable for damages, and the amount of such damages; and

    e. Whether Sears should be enjoined from such conduct in the future.

33. The common questions in this case are capable of having common answers. If Plaintiff's claim that Sears routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### D. Typicality

34. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### E. Protecting the Interests of the Class Members

35. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

### F. Proceeding via Class Action is Superior and Advisable

36. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Sears is small because it is not economically feasible for Class members to bring individual actions.

37. Management of this class action is unlikely to present any difficulties. Courts have routinely certified classes in TCPA actions. These cases include, but are not limited to: *Johnson v. Yahoo!, Inc.*, No. 14-2028, 2016 WL 25711, at *9 (N.D. Ill. Jan. 4, 2016); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) (granting TCPA class certification and finding that "[w]ithout the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute"); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Violations of the Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

38.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

39.     Sears sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

40.     Each of the aforementioned messages by Sears constitutes a violation of the TCPA.

41.     Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

42.     Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Sears in the future.

43.     Plaintiff and the Class are also entitled to and do seek a declaration that:

   a. Sears violated the TCPA;

   b. Sears placed telemarketing text messages; and

   c. Sears placed text messages to the Plaintiff and the Class without prior express written consent.

## COUNT II
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

44.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

45.     Sears knowingly and/or willfully sent multiple automated text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Class without

their prior express consent.

46. Each of the aforementioned messages by Sears constitutes a knowing and/or willful violation of the TCPA.

47. As a result of Sears's knowing and/or willful violations of the TCPA, Plaintiff and the Class are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

48. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such conduct by Sears in the future.

49. Plaintiff and the Class are also entitled to and do seek a declaration that:

　a. Sears knowingly and/or willfully violated the TCPA;

　b. Sears knowingly and/or willfully placed telemarketing text messages to Plaintiff and the Class;

　c. Sears knowingly and/or willfully obtained the telephone numbers of non-customers;

　d. Sears willfully placed telemarketing text messages to non-customers such as Plaintiff and the Class, knowing they did not have prior express written consent to do so; and

　e. It is Sears's practice and history to place telemarketing text messages to non-customers without their prior express consent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Sears as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Sears in the future;
2. Declaratory relief as requested;

3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

5. An award of attorneys' fees and costs to counsel for Plaintiff; and

6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: October 17, 2016

Respectfully submitted,

By /s/ *Sofia Balile*
Sofia Balile, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (917) 981-0849
Facsimile: (888) 953-6237
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 17, 2016, a true and correct copy of the foregoing First Amended Class Action Complaint was served electronically by the U.S. District Court District of New Jersey Electronic Document Filing System (ECF) and that the document is available on the ECF system.

                                By /s/ Sofia Balile_____

                                     Sofia Balile